**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

TIAR DUKE,

    Plaintiff,

v.

ADRIAN GARCIA, a Rio Rancho Police Officer, sued in his individual capacity; BENJAMIN SANCHEZ, a Rio Rancho Police Officer, sued in his individual capacity; AUTOMOBILE ACCEPTANCE CORPORATION; ACCESS AUTO RECOVERY, LLC; and GUSTAVO SOTO,

    Defendants.

No. 11-CV-784-BRB/RHS

**ORDER GRANTING PLAINTIFF SUMMARY JUDGMENT AGAINST ACCESS AUTO RECOVERY, LLC AND GUSTAVO SOTO FOR TRESPASS TO LAND AND VIOLATION OF NEW MEXICO'S UNIFORM COMMERCIAL CODE AND UNFAIR PRACTICES ACT**

**BALDOCK**, Circuit Judge.[*]

    Gustavo Soto owns and operates Access Auto Recovery, LLC, a New Mexico business specializing in the repossession of motor vehicles. Plaintiff Tiar Duke sued Soto and Access Auto, among other Defendants, on a number of claims involving the April 2011 repossession of her car. This opinion deals solely with Plaintiff's motion

---

[*] The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

for summary judgment on her claims that, while repossessing her car: (1) Soto and Access Auto trespassed on her land; (2) Access Auto violated New Mexico's Uniform Commercial Code (UCC); and (3) Access Auto violated New Mexico's Unfair Practices Act (UPA).[1]  See Doc. #157.

I.

The relevant, undisputed facts are as follows.  On April 15, 2011, Defendant Soto drove his Access Auto tow truck to Plaintiff's home in Rio Rancho, New Mexico, intending to repossess her Dodge Charger due to her failure to make payments.  With Soto was Jerome Baca, an Access Auto employee.  At Plaintiff's home, the duo spotted the Charger, and Plaintiff spotted the duo.  Baca then exited the truck and approached Plaintiff's garage.  A confrontation ensued, the details of which are fiercely disputed.  Most significantly for purposes here, Soto testified he saw Plaintiff push Baca several times, whereas Plaintiff testified it was in fact Baca who pushed her several times.  At some point during this fracas, Soto left his truck and approached Plaintiff and Baca.  Minutes later, Plaintiff and Soto each called 9-1-1.  While waiting for the police, Soto and Baca did not leave Plaintiff's property.

---

[1] Plaintiff has also moved for summary judgment on her UPA claim against Automobile Acceptance Corp., as has Auto Acceptance.  See Docs. ##150, 158.  Because this claim revolves around a different fact pattern, however, the Court addresses it in a companion opinion.  See Doc. #216, at 5–18.  In addition, although Plaintiff implies in the present motion she also brought her UCC and UPA claims against Soto, her amended complaint states she brought them against Access Auto and Automobile Acceptance only.  See Doc. #52, at 15.

2

Several Rio Rancho police officers eventually arrived, separated the parties, interviewed them, and then coordinated Soto and Baca's repossession of the vehicle.

II.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To the extent material facts are genuinely disputed, the Court views the facts in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 380 (2007). The party seeking summary judgment bears the initial burden of indicating the portions of the record that "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." Libertarian Party of NM v. Herrera, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(e) (2007)). With these basic summary judgment principles in mind, the Court turns to the issues presented here.

III. Trespass to Land & Uniform Commercial Code

Plaintiff first claims Defendants Soto and Access Auto trespassed on her land. This is a state-law claim brought under 28 U.S.C. § 1367, so the Court applies New Mexico statutory law and common law. See BancOklahoma Mortg. Corp. v. Capital Title Co., 194 F.3d 1089, 1103 (10th Cir. 1999). "Trespassing, both at common law and by statute, is the entry onto another's property without permission of the owner."

3

State v. Tower, 59 P.3d 1264, 1265 (N.M. App. 2002). Both sides agree Soto and Baca's initial entry onto Plaintiff's property was *not* a trespass to land because it was privileged under N.M. Stat. Ann. § 55-9-609. This statute, which copies UCC § 9-609 verbatim, authorizes a secured party to take possession of a collateral "without judicial process, if it proceeds without a breach of the peace." No one disputes Access Auto and Soto were pursuing a collateral on behalf of Defendant Automobile Acceptance Corp., a secured party. So Plaintiff's trespass claim is actually that Defendants failed to leave her land *after* they lost their UCC-based privilege to be there because of a breach of the peace. Plaintiff's second claim—closely related to the first—is brought under the UCC directly, which "supports the recovery of actual damages for committing a breach of the peace in violation of Section 9-609." Id. § 55-9-625 cmt. 3. In short, Plaintiff asserts Soto and Baca violated § 55-9-609 by repossessing her car after a breach of the peace.[2]

The parties agree a breach of the peace occurs when a debtor orally protests repossession. See, e.g., State v. Trackwell, 458 N.W.2d 181, 185 (Neb. 1990) (citing Dixon v. Ford Motor Credit Corp., 391 N.E.2d 493 (Ill. App. 1979)); see also Brophy v. Ament, 2009 WL 5206041, at *21 (D.N.M. Nov. 20, 2009) (unpublished). Plaintiff asserts she breached the peace by orally protesting Soto and Baca's

---

[2] To clarify, UCC § 55-9-609 is being used as both a shield and a sword here—a shield (i.e. limited privilege) to a trespass to land claim for the Defendants' initial entry and a sword to recover damages for Defendants' alleged failure to comply with the statute's strictures.

4

repossession efforts.  Defendants, on the other hand, assert Plaintiff never told Soto and Baca to leave her property.  The Court disagrees, at least in regard to Baca, and by extension, Access Auto.  See Tercero v. Roman Catholic Diocese, 48 P.3d 50, 58 (N.M. 2002) ("[I]t is the law in New Mexico that an employer is liable for intentional torts of his employee if the torts are committed in the course and scope of the employment[.]").  On the record presented, a reasonable jury would have no choice but to conclude Plaintiff demanded Baca leave her property.  Indeed, evidence indicates Plaintiff made *numerous* such demands.  In deposition, Plaintiff testified her first words to Baca were "Get out of my garage."  Doc. #157-5, at 2.  Plaintiff also testified she told Baca "if he didn't leave, I was going to call the police."  Id. at 3.  Furthermore, Officer Benjamin Sanchez, himself a Defendant, testified when he arrived at the scene Plaintiff was "irate" and repeatedly screaming "I want them off my property!"  Doc. #157-2, at 3.[3]  Officer Adrian Garcia, also a Defendant, similarly stated he heard Plaintiff "in an escalated voice speaking to Mr. Sanchez that she wanted them off her property."  Doc. #189-1, at 2.  Finally, the transcript of Plaintiff's three 9-1-1 calls leaves zero doubt—an oral demand was made:

> Track 1
> (Telephone ringing)
> [Duke]: *Get off my property* . . . Yes it is.  *Get off my property*.  Hello.
> [Operator]: Sandoval 911.  What is the address of your emergency?

---

[3]  Access Auto and Soto assert Sanchez's statements lack foundation. Although some of Sanchez's deposition testimony may indeed lack foundation, the specific quotes referenced here are based entirely on his personal observation.

5

Hello.  Hello.  Sandoval 911.  Hello?  Hello?  Sandoval 911.
[Duke]: *Get off my property. . . .*

Track 2
(telephone ringing)
[Duke]: *. . . Get off my property …. Please get out of my door … Please get out of my door.  I'm telling you to get out of my door.*
[Operator]: Valencia County 911.  What is the address of you[r] emergency.
[Duke]: Hello.  Could you send a police officer – Hello?
[Operator]: Hello.  Valencia County 911. . . . [address and phone number given] . . . All right.  Tell me exactly what happened.
[Duke]: Okay.  There are some guys here trying to take my car.  He's in my garage and *won't get out*.  And he's on my property.
[Operator]: Okay.  Who is this guy?
[Duke]: I don't know.  I've never him [sic] them before.
[Operator]: Are they repossessing your vehicle?
[Duke]: Yes.  He's trying to.  Can they come on your property?
[Operator]: Yeah.  If they are repossessing, they can.
[Duke]: Okay.  He's in my garage.
Male voice: _____ [presumably inaudible]
[Operator]: Okay.  I can send an officer over, but they so [sic] have the right to repossess the car.
[Duke]: Okay.  That's fine, but he's in my garage.  *He needs to get out of my garage*.
[Operator]: Okay.  We'll send somebody right over.
[Duke]: Okay.  Thanks.  They are sending somebody over right now.  *You need to get out of my garage*.

End of Track

Track 3
(telephone ringing)
[Operator]: Sandoval County 911.  What is the address of the emergency?
[Duke]: Yes.  Is someone coming to 1629?
[Operator]: Yes. We have three officers on the way.
[Duke]: Okay.  How much longer do we have to wait?  I mean this is an emergency.
[Operator]: They are on their way, Ma'am.  We have three officers on their way.  What's going on right now?

[Duke]: Okay.  These guys – *They won't leave* –
[Operator]: Oh.
[Duke]: He's here standing in my – he's blocking – he has his hands on my damn garage.  He's blocking me from pulling it down.  *And he don't need to be in my garage.*
[Operator]: Okay.  The male is?
[Duke]: yes.  The guy.  *He is standing right here and won't move.*
Male voice: _____. [presumably inaudible]
[Duke]: Okay, *then move so I can let this down.  He will not get out of my garage.*
[Operator]: Is he inside your garage?
[Duke]: He is.  He is.
[Operator]: How many – how many people are out there?  How many males?
[Duke]: there is two. . . . And I am a female.
[Operator]: Okay.  And where is the other male.
[Duke]: He's right here also.
[Operator]: is he in the garage as well?
[Duke]: No.  He is just _____ [presumably inaudible].
Male voice: Tell her why we are here.  To repossess your car.

End of Track

Doc. #157-3 (emphases added).  These calls document *nine* different times where Plaintiff directly tells a man attempting to repossess her car to either leave her property or get out of her garage.  An additional *six* times Plaintiff tells the operator she wants this man to leave.  Access Auto and Soto do not contest the transcript's authenticity.  Nor do they argue the operator's (highly questionable) assurance that the repossession was lawful affects the analysis.  Rather, they first assert Plaintiff's statements, in the recording and otherwise, are self-serving.  That may be so, but the question at this point is whether her statements are contradicted, not whether they are self-serving.  Regardless, Defendants Sanchez and Garcia support Plaintiff's

7

account, and their statements are assuredly not self-serving. Access Auto and Soto also assert "the meaning of the dialogue recorded on these tapes is not clear." Doc. #169, at 3. The Court disagrees. The tapes are crystal clear—Plaintiff unequivocally demanded, at minimum, that a male repossessor vacate her garage and property.

More significantly, Access Auto and Soto assert the above evidence is contradicted—and thus, an issue of fact exists—because Soto testified he never heard Plaintiff say anything about leaving her property. See Doc. 169-1, at 6. Soto, however, also admitted he did not hear the initial conversation between Baca and Plaintiff because he was in his truck, id. at 3, and that he could only "sort of" hear her 9-1-1 calls because he was back inside his truck calling 9-1-1 when she made them, id. at 6. Thus, his own failure to hear a demand, even if true, does not contradict the abundant evidence indicating demands were made and Baca heard them. Again, this directly implicates Access Auto. See Tercero, 48 P.3d at 58.

Even assuming a genuine dispute exists on whether Soto (somehow) failed to hear Plaintiff's demands, and assuming his own employee's knowledge is not imputed to him (a point which Plaintiff does not raise), Soto still testified he saw Plaintiff shove Baca almost immediately after Baca entered her property. See Doc. 157-1, at 5–6. Similarly, in his 9-1-1 call, Soto stated Plaintiff was "pushing [Baca] because she is trying to shut the garage." Doc. #157-4. Pushing is physical violence, and actual violence means a breach of the peace has occurred, regardless of who initiated it. See, e.g., Williams v. Ford Motor Credit Co., 674 F.2d 717,

8

718–20 (8th Cir. 1982) (finding repossession lawful because it "was accomplished without any incident which might tend to provoke violence"); Marine Midland Bank-Cent. v. Cote, 351 So. 2d 750, 752 (Fla. Dist. Ct. App. 1977) ("[T]he debtor's physical objection bars repossession even from a public street."); Thompson v. Ford Motor Credit Co., 324 F. Supp. 108, 115 (D.S.C. 1971) ("[A] breach of the peace is a violation of public order, a disturbance of public tranquility, by any act or conduct inciting to violence." (citation omitted)). Soto admits as much in his deposition. "[Attorney:] At this point with Ms. Duke having pushed Mr. Baca, had there been what you would consider a breach of the peace that had taken place? [Soto:] Once that happened? [Attorney:] Yeah. [Soto:] Yes." Doc. #169-1, at 8. Thus, by his own admission, Soto declined to leave Plaintiff's property after he witnessed a breach of the peace, and he remained on Plaintiff's property until he repossessed her car.

In response, Access Auto and Soto contend Plaintiff's "crazy" and "bizarre behavior when she pushed Baca" did not revoke the privilege to be on her land because she gave no indication she was opposed to the repossession. Again, this is undeniably false in regard to Baca. As to Soto, Defendants cite his testimony that Plaintiff did not "act like she was opposed" to the taking of the vehicle because she "told us that she had it worked out with the bank." Doc. #169-1, at 5. Soto's testimony is self-contradictory, as pushing someone who enters your property to repossess your car is almost the definition of opposing repossession. We could reject Soto's testimony because of this contradiction and the fact that the rest of the

9

evidence here—most importantly, the 9-1-1 tapes and Sanchez and Garcia's testimony—renders it utterly implausible. See Seshadri v. Kasraian, 130 F.3d 798, 802 (7th Cir. 1997) ("[T]estimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it."). Regardless, Soto himself *admits* he viewed the push as a breach of the peace, and he has cited no case law where physical violence occurred and a court nevertheless declined to find breach of the peace as a matter of law.[4] At the end of the day, Soto witnessed a breach of the peace and yet did not leave Plaintiff's property until he repossessed her car.

Two additional arguments raised by Access Auto and Soto should be addressed. First, they argue, seemingly in the alternative, that they cannot be liable for trespass to land or violation of § 55-9-609 because they abandoned repossession once Plaintiff called the police, and the subsequent repossession was a separate attempt to which Plaintiff voluntarily agreed. Access Auto and Soto again rely on Soto's deposition, where he disclaimed any intent or hope to repossess the vehicle after the police were called. Said Soto, "We stopped for the cops. . . . [I]f it wasn't going to happen to get [the] vehicle, we were—you know, that was it." Doc. #169-1.

As above, this narrative is utterly implausible. Even if accepted as true, however, Access Auto and Soto would still be liable on the claims here as a matter

---

[4] The Court found secondary authority indicating "all courts recognize actual violence as an automatic breach of the peace." Ryan McRobert, Defining "Breach of the Peace" in Self-Help Repossessions, 87 Wash. L. Rev. 569, 581–82 (2012).

of law. Soto's testimony would not affect the trespass to land claim because it is undisputed Soto and Baca never left Plaintiff's property while waiting for the police, even though the breach of peace unquestionably terminated their privilege to be there. This was a trespass to land. And in regard to § 55-9-609, not only did Soto testify the police were present during the eventual repossession, but he essentially concedes they controlled the process. "[Attorney]: Who told you that [Plaintiff] was giving up the vehicle for repossession? [Soto]: The cops. . . . [Attorney]: Did you overhear any conversations that [led] you to understand what it was that [led] Ms. Duke to decide to give up the vehicle voluntarily? [Soto]: No." Doc. #169-1, at 9–10. According to the New Mexico Supreme Court, a non-judicial repossession is automatically wrongful when "a repossessor is . . . assisted by law enforcement officials in order to prevent a breach of the peace. . . . [T]he imprimatur of the state evinced by the presence of a law enforcement official, without judicial process, removes a repossession from the ambit of [the previous version of § 55-9-609]." Waisner v. Jones, 755 P.2d 598, 602 (N.M. 1988) (citations omitted).[5] As such, even

---

[5] In an earlier order, the Court held a per se breach of peace did not occur because the police officers did not accompany Soto and Baca to the repossession; rather, they only came when dispatched. Doc. #83, at 9. In hindsight, the Court believes it interpreted Waisner too narrowly on this point. Read in full, Waisner does not appear to strictly require initial accompaniment for an automatic breach so much as officer *presence* and *assistance* during the repossession. This broader interpretation comports: (1) with the official commentary to § 55-9-609, which states that a secured party is not authorized "to utilize the *assistance* of a law-enforcement officer," § 55-9-609 cmt. 3 (emphasis added); (2) with other courts, which have

(continued...)

11

if Access Auto and Soto totally abandoned their first repossession attempt, their later, successful effort did not comply with § 55-9-609.[6] Thus, they are directly liable under the UCC, in addition to being liable for trespass to land.

Second, Access Auto and Soto argue Plaintiff's motion should be denied even if they lose on these issues. To reach this fanciful conclusion, Access Auto and Soto assert a judicial resolution at this juncture would not streamline litigation because a trial on damages would cover the same territory as a trial on the merits. Defendants cite no binding or even remotely persuasive law for this wishful thinking, so the Court declines to exercise its discretion in such a manner.

In summary, the Court finds as a matter of law that Defendants Access Auto and Soto intentionally trespassed on Plaintiff's land when they repossessed her vehicle, and that Access Auto violated N.M. Stat. Ann. § 55-9-609 when Soto and

---

[5](...continued)
"consistently [held] that officer *assistance* with the repossession constitutes a breach of the peace." McRobert, supra note 4, at 580–81 (emphasis added); and (3) with the Tenth Circuit, which holds that officers "may not aid the repossessor in such a way that the repossession would not have occurred *but for their assistance*." Marcus v. McCollum, 394 F.3d 813, 819 (10th Cir. 2004) (emphasis added). This interpretative correction does not change the Court's earlier order, as there the Court denied Officer Garcia summary judgment. Plaintiff has not moved for summary judgment against Officers Sanchez and Garcia on her due process claim.

[6] This, among other things, distinguishes Clarin v. Minn. Repossessors, Inc., 198 F.3d 661 (8th Cir. 1999), and Wade v. Ford Motor Credit Co., 668 P.2d 183 (1983), which Defendant Auto Acceptance relies upon in a separate brief to argue that Access Auto and Soto abandoned their initial attempt at repossession. See Doc. #172, at 18–21. In neither of these cases did the eventual repossession occur by police assistance and control.

Baca continued with the repossession after a breach of the peace. We therefore grant Plaintiff summary judgment on these claims.

## IV. Unfair Practices Act

The UPA, codified at N.M. Stat. Ann. §§ 57-12-1 through 57-12-26, provides individual remedies for "unfair, deceptive, or unconscionable trade practices." Quynh Truong v. Allstate Ins. Co., 227 P.3d 73, 80 (N.M. 2010). Again, because Plaintiff's UPA claims are brought pursuant to § 1367, the Court applies New Mexico law. See BancOklahoma, 194 F.3d at 1103. The UPA itself, however, requires courts construing it to "be guided by the interpretations given by the . . . federal courts." N.M. Stat. Ann. § 57-12-4. Thus, in interpreting the UPA, the Court will look to federal law *and* to New Mexico case law, which has presumably relied on federal law per § 57-12-4.

A UPA claim requires an "oral or written statement, visual description, or other representation of any kind" that: (1) was false or misleading; (2) was knowingly made; (3) was either made in connection with the sale, lease, rental, or loan of goods or services *or* in the extension of credit *or* in the collection of debts; (4) was made by a person in the regular course of that person's trade or commerce; and (5) may, tends to, or does deceive or mislead any person. Id. § 57-12-2(D).[7] At

---

[7] Various state and federal courts have construed the UPA as requiring different numbers of essential elements. See, e.g., Lohman v. Daimler–Chrysler Corp., 166 P.3d 1091 (N.M. 2007) (three elements); Billsie v. Brooksbank, 525 F.
(continued...)

13

the summary judgment stage, Plaintiff must show no genuine dispute exists as to whether she has proved these elements. See Fed. R. Civ. P. 56(a).

### A. Representation of any kind

To establish a "representation of any kind," Plaintiff asserts Soto and Baca falsely represented *through their actions* that Access Auto was entitled to proceed with repossession on her property over her protest and with police assistance. In response, Access Auto contends an act or omission untethered to an oral or written statement cannot qualify as a representation under the UPA. Access Auto cites no case law for this argument, nor does it attempt to meaningfully interact with the statute. While the Court would probably be within its discretion to treat the argument as conceded, it does not do so out of an abundance of caution.

"Our interpretation of a statute begins with its plain language." United States v. Sprenger, 625 F.3d 1305, 1307 (10th Cir. 2010). Here, while the UPA does not define "representation," see N.M. Stat. Ann. § 57-12-2 ("Definitions" section), various UPA provisions indicate the term is to be construed as broadly as Plaintiff urges. First and foremost is the language already mentioned; that is, the UPA covers "representation[s] *of any kind*." Id. § 57-12-2 (emphasis added). Nearly as significant is the immediate context, which lists a "representation of any kind"

---

[7](...continued)
Supp. 2d 1290, 1295 (D.N.M. 2007) (four elements). The disagreement appears to be one of organization and grouping rather than substance. Instead of relying on a specific case for the elements, the Court here utilizes the statutory language itself.

alongside an "oral or written statement," indicating a definite distinction between the two, with the former being broader than the latter. See State v. Rivera, 82 P.3d 939, 944 (N.M. 2003) ("We are generally unwilling to construe one provision of a statute in a manner that would make other provisions null or superfluous."). The statute also covers "*failing to state* a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D)(14) (emphasis added). Finally, a later subsection states a "willful misrepresentation" can include "regrooving tires or performing chassis repair" *without informing* the vehicle's prospective purchaser. Id. § 57-12-6. Combined, these provisions plainly indicate the term "representation," as used in the UPA, covers action and inaction, in addition to oral and written statements. After all, if surreptitiously making physical changes to a vehicle is a representation, then surely openly taking the vehicle away also qualifies.

Case law supports this interpretation. In general, New Mexico courts have stated multiple times UPA provisions are to be interpreted liberally. See, e.g., Quynh Truong, 227 P.3d at 81. More specifically, the New Mexico Court of Appeals stated in Jaramillo v. Gonzales, 50 P.3d 554 (N.M. App. 2002), that a bank's *refusal to acknowledge* liability on a contract was a "false representation . . . within the statutory definition of an unfair practice." Id. at 562. "The UPA does not require a statement," the court held, punctuating its analysis on this issue, "but rather any representation." Id. (citing §57-12-2(D)). A later Court of Appeals decision, citing Jaramillo, stated in dicta that a company's systematic refusal to acknowledge the role

15

played by its product in causing injuries and death "could also provide a viable platform for Plaintiff's UPA claim." Lohman v. Daimler-Chrysler Corp., 166 P.3d 1091, 1099 (N.M. App. 2007). Similarly, a much earlier Court of Appeals decision stated an auto dealer's failure to disclose potential liability to a buyer would be actionable under the UPA so long as it was a knowing failure. See Richardson Ford Sales, Inc. v. Johnson, 676 P.2d 1344, 1347–48 (N.M. App. 1984). Moreover, the New Mexico Supreme Court found, albeit in the context of equitable estoppel, that New Mexico's eight-year issuance of food stamps to an ineligible citizen was a "misrepresentation" inconsistent with the state later bringing a claim against the citizen on the same issue. Waters-Haskins v. N.M. Human Servs. Dep't, Income Support Div., 210 P.3d 817, 825-26 (N.M. 2009).[8]

Access Auto and Soto's only argument regarding a representation is that an act or omission cannot qualify under the UPA. Having disposed of that argument, the Court therefore finds Access Auto represented, within the meaning of the UPA, to Plaintiff through Soto and Baca's actions that its repossession of her car was legal.

### B. False or misleading

Access Auto next argues that even if it did represent the repossession was legal, this representation was not "false or misleading" because Plaintiff never told

---

[8] Notably, Black's Law Dictionary defines a "representation" as a "presentation of fact—either by words *or by conduct*—made to induce someone to act . . . ." Black's Law Dictionary 1415 (9th ed. 2009) (emphasis added).

them to leave. In other words, Access Auto argues Soto and Baca *did* have the right to be there and eventually repossess Plaintiff's car. For reasons thoroughly detailed above in regard to Plaintiff's trespass to land and UCC claims, the Court disagrees.

C. Knowingly

Even if a false or misleading representation was made, Access Auto contends it was not made knowingly. "The [UPA's] 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." <u>Stevenson v. Louis Dreyfus Corp.</u>, 811 P.2d 1308, 1311–12 (N.M. 1991). Interestingly, Access Auto does not assert Soto and Baca were unaware they were making a *false* representation. Rather, Access Auto argues Plaintiff has failed to demonstrate Soto and Baca knew they were making a *representation* at all by remaining on her property. Access Auto cites no authority for this argument, and the Court declines to give it credence. Plenty of uncontradicted evidence indicates Soto and Baca either knew or should have known they, by their actions, were representing to Plaintiff what they were doing was legal *and* that such a representation was false. For example, Soto acknowledged in deposition that repossession attempts should end with a breach of the peace and that a breach occurred when Plaintiff pushed Baca. Doc. #189-2, at 7–8.

D. May, tends to, or does deceive or mislead any person

Access Auto argues Plaintiff was not deceived by any representation because

17

she vehemently opposed repossession at all times. This assertion is factually questionable, at best, seeing as how Soto testified Plaintiff voluntarily gave up the car after the police intervened. Moreover, this argument misunderstands the standard at play. While the UPA does cover a representation that actually deceives someone, it also encompasses a representation that "may" or "tends to . . . deceive or mislead *any person*." N.M. Stat. Ann. § 57-12-2(D). In other words, "[t]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.'" Smoot v. Physicians Life Ins. Co., 87 P.3d 545, 550 (N.M. App. 2003). Thus, even assuming Access Auto is correct about Plaintiff not being deceived, it has declined to argue its representation would not tend to deceive or mislead a reasonable person, much less any person. As such, it has failed to create a genuine issue of fact on this element.

Access Auto does not contest the third and fourth elements listed above; that is that the representation was either made in connection with the sale, lease, rental, or loan of goods or services *or* in the extension of credit *or* in the collection of debts, and that it was made by a person in the regular course of that person's trade or commerce.[9] Thus, Plaintiff has provided evidence to support her UPA claim against Access Auto, and Access Auto has failed to set forth specific facts or arguments that

---

[9] Elsewhere, Defendant Auto Acceptance argues that repossession efforts do not qualify as the collection of a debt under the UPA. The Court deals with that contention in its companion opinion. See Doc. #216, at 10–12.

18

would allow the Court to find in its favor or to find a genuine issue of material fact.

V.

No genuine dispute of fact exists as to Plaintiff's claims that Defendants Soto and Access Auto trespassed on her land and that Access Auto violated the UCC, N.M. Stat. Ann. § 55-9-609, and UPA, N.M. Stat. Ann. § 57-12-3. Accordingly, Plaintiff's motion for summary judgment on these claims, Doc. #156, is GRANTED.

                                     Entered for the Court
                                     this 28th day of February, 2014


                                     Bobby R. Baldock
                                     United States Circuit Judge
                                     Sitting by Designation