# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

TIAR DUKE,

     Plaintiff,

v.

ADRIAN GARCIA, a Rio Rancho
Police Officer, sued in his individual
capacity; BENJAMIN SANCHEZ, a
Rio Rancho Police Officer, sued in his
individual capacity; AUTOMOBILE
ACCEPTANCE CORPORATION;
ACCESS AUTO RECOVERY, LLC;
and GUSTAVO SOTO,

     Defendants.

No. 11-CV-784-BRB/RHS

**ORDER: (1) GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT TO PLAINTIFF AGAINST AUTOMOBILE ACCEPTANCE CORP. FOR VIOLATION OF NEW MEXICO'S UNFAIR PRACTICES ACT AND UNIFORM COMMERCIAL CODE, AND ON VICARIOUS LIABILITY; (2) DENYING AUTO ACCEPTANCE SUMMARY JUDGMENT ON PLAINTIFF'S UPA CLAIMS; AND (3) DENYING AUTO ACCEPTANCE'S MOTION TO EXCLUDE TEXT MESSAGES**

**BALDOCK**, Circuit Judge.[*]

Automobile Acceptance Corp. is a Georgia-based company whose principal business is sub-prime automotive financing and personal loans. Plaintiff Tiar Duke

---

[*] The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

sued Auto Acceptance, among other Defendants, on a number of claims involving the April 2011 repossession of her car. This opinion deals with Plaintiff and Auto Acceptance's cross-motions for summary judgment on Plaintiff's claims that Auto Acceptance violated New Mexico's Unfair Practices Act (UPA) by sending her false text messages before the repossession, by failing to inform her of a surplus from the vehicle's subsequent sale, and by failing to pay her the total surplus amount. It also deals with Plaintiff's motion for summary judgment on her claims that Auto Acceptance violated the Uniform Commercial Code (UCC) by not refunding her the total surplus it owed her and by failing to explain sufficiently the surplus it did remit to her. Finally, this opinion deals with Plaintiff's motion for summary judgment on Auto Acceptance's vicarious liability for the actions committed by Access Auto Recovery, LLC, in carrying out the repossession.

## I.

The undisputed, relevant facts are as follows. In September 2008, Plaintiff purchased a Dodge Charger from a dealership in Georgia, with the contract eventually being assigned to Auto Acceptance. Two-and-a-half years later, she stopped making payments. Auto Acceptance thereafter attempted to contact Plaintiff at a variety of phone numbers and addresses. Most significantly for purposes here, on April 13 and 14, 2011, Auto Acceptance employee Jon Muller sent Plaintiff multiple text messages stating a warrant had been filed for her arrest and something akin to "I hope you enjoy jail." No warrant was ever filed for Plaintiff's arrest.

2

On April 15, 2011, Defendant Access Auto Recovery, LLC, repossessed Plaintiff's car at her home in Rio Rancho, New Mexico, on behalf of Auto Acceptance. (The details of this repossession are laid out more fully in several companion opinions. See Doc. ##215, 218.) That same day, Auto Acceptance mailed Plaintiff a letter stating she could recover the vehicle if she paid $5,415.45. This amount, Auto Acceptance wrote, was the "total amount of [Plaintiff's] unpaid balance." Doc. #159-5, at 1. Broken down, the amount included $4,940.45 for the unpaid loan balance and $475 for the cost of repossessing and storing. No money was due, the letter stated, for attorneys' fees, legal expenses, other charges, or a refund of interest. Finally, Auto Acceptance wrote that if it received more money from selling the vehicle "than you owe, you will get the extra money." Id. at 2. The letter was eventually delivered to the same Rio Rancho house where the repossession occurred, and it was signed for by "T. Duke."

Nearly three weeks later, on May 4, the vehicle was sold to a third party, with Auto Acceptance receiving a net amount of $8,390.[1] While Auto Acceptance knew almost immediately Plaintiff was owed a surplus payment, at no point before September 2—nearly four months later—did it attempt to send Plaintiff the surplus amount, call her to inform her of the surplus, or notify her of the surplus. Plaintiff

---

[1] The vehicle's selling price was apparently $8,600, with a $135 selling fee and a $75 "recon" fee deducted to reach the net amount above. See Doc. #172-2, at 2 (affidavit of Daniel Longino, Auto Acceptance manager and representative).

filed the present lawsuit on September 2, 2011. After this filing, Auto Acceptance

sent the following letter to Plaintiff's attorney. Significantly, the letter was dated

May 5, 2011, despite being sent and received nearly six months after that date:

> Dear Ms. Duke,
>
> The vehicle on your account with Automobile Acceptance Corporation
> has been sold resulting in an overpayment that has been calculated as
> follows:

| | |
|---|---|
| Sales Proceeds | $  8,390.00 |
| Fees & Charges | $           - |
| Loan Payoff | $  6,435.50 |
| Balance Due Customer | $  1,954.50 |

> Enclosed please find a check payable to you for the [c]overage on your
> account.

Doc. #150-2, at 1. The enclosed check, dated November 16, 2011, was for

$1,954.50. In an affidavit filed nearly two years later, Auto Acceptance manager and

representative Daniel Longino broke down the $6,435.50 "Loan Payoff" as follows:

| | |
|---|---|
| Original Amount Financed | $10,000.00 |
| Principal Paid | (5,059.55) |
| Principal Due | $4,940.45 |
| Interest Due | $434.56 |
| Late Fees for February, March, and April | $47.40 |
| NSF Fees | $690.00 |
| Actual Repossession Charge After Invoice | $375.00 |
| GAP Rebate | (51.91) |
| **Total Payoff Amount** | **$6,435.50** |

Doc. #172-2, at 2–3.[2]

---

[2] The numbers in parentheses here are meant to be subtracted. Moreover, for
(continued...)

On August 15, 2013, Auto Acceptance moved for summary judgment on Plaintiff's UPA claims. <u>See</u> Doc. #150. It also filed a motion in limine to exclude evidence of various text messages on Plaintiff's phone due to lack of authentication. <u>See</u> Doc. #151. Soon thereafter, Plaintiff moved for summary judgment on her UPA and UCC claims against Auto Acceptance. <u>See</u> Doc. #158.

## II. Unfair Practices Act

The Court need not repeat summary judgment principles, as they can be found in a companion opinion. <u>See</u> Doc. #215, at 3. For the same reason, the Court does not need to reiterate the basics of the UPA. <u>See id.</u> at 13–14.

Plaintiff alleges Auto Acceptance violated the UPA by sending her false and misleading text messages prior to repossession and by misleading her in regard to the surplus amount from the vehicle's eventual sale. At the summary judgment stage, Plaintiff must show no genuine dispute exists as to whether she has proved the required UPA elements on these claims. <u>See id.</u>;Fed. R. Civ. P. 56(a).

### A. Text messages

Plaintiff first alleges Auto Acceptance violated the UPA when Muller texted her false and misleading messages prior to repossession. In response, Auto Acceptance admits the texts in question were false because no warrant had been

---

[2](...continued)
clarity's sake the Court has added the two underlines to indicate how the numbers are supposed to be viewed.

issued, and it admits Muller knew or should have known no warrant had been issued. It argues, however, that Plaintiff cannot prove with *admissible* evidence that the text messages in the record—which were sent to Plaintiff's phone by someone with the username "stickandmove10"—are attributable to Muller. More precisely, Auto Acceptance asserts Plaintiff has not provided evidence to authenticate the texts on her phone from "stickandmove10" under Fed. R. Evid. 901. Indeed, Auto Acceptance asserts, Plaintiff has admitted she does not know who "stickandmove10" is. In reply, Plaintiff concedes her lack of personal knowledge, but argues the undisputed evidence—including Auto Acceptance's own admissions—proves Muller sent the texts. The Court agrees.

Only admissible evidence may be considered at the summary judgment stage. See Pastran v. K-Mart Corp., 210 F.3d 1201, 1203 n.1 (10th Cir. 2000) (citing Fed. R. Civ. P. 56(e)). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, Plaintiff has introduced into evidence a screen shot of a text message sent to her phone by "stickandmove10" on April 13 stating, "Are you aware that [Auto Acceptance] filed a warrant for your arrest for concealment of a motor vehicle, under statute 16-9-51 of the GA General Assembly?" Doc. #159-1, at 1. Plaintiff introduced other April 13 text messages—also from "stickandmove10"—stating "If you want the charges dropped you need to surrender the car" and "You're making

some pretty bad choices.  Hope you enjoy jail." Id. at 2–3.

Plaintiff asserts these messages from "stickandmove10" were from Muller. Auto Acceptance disputes this particular fact.[3]  In deposition, however, Auto Acceptance manager and representative James Balk testified that Muller openly admitted to him that he sent texts to Plaintiff on April 13 mentioning both a warrant and jail.  See Doc. #177-3, at 4.  This admission establishes authenticity—that is, that Muller sent the texts attributed to "stickandmove10."  Indeed, the admission is strong enough to rule out a contrary finding.

Nevertheless, Auto Acceptance argues while Muller did indeed send text messages to Plaintiff, no evidence suggests the specific texts from "stickandmove10" were from Muller.  For support, Auto Acceptance cites an affidavit from Balk—filed after Balk's deposition—stating that although Muller indeed used a company cell phone to send two "inappropriate messages" to Plaintiff, no company phone has been found to have the user name "stickandmove10."  Doc. #197-1, at 2.  This argument is ridiculous.  Fact is, Auto Acceptance has openly admitted Muller sent text messages to Plaintiff on April 13 stating a warrant had been issued for her arrest and he hoped she enjoyed jail, and Plaintiff has introduced text messages sent to her from "stickandmove10" on April 13 stating a warrant had been issued for her arrest and that "stickandmove10" hoped she enjoyed jail.  No reasonable jury could look at this

---

[3]  Notably, Auto Acceptance does *not* contest the authenticity of the text messages in any other way (i.e. time, date, existence, etc.)—just their authorship.

and conclude Muller did not author the text messages on Plaintiff's phone; to do so, they would essentially have to find that a miracle or a coincidence of astronomical proportions had occurred. In the absence of a more compelling argument, the inability of Auto Acceptance's tech personnel to directly link Muller and "stickandmove10" does not change this conclusion.

Regardless, even if the Court found the "stickandmove10" messages lacked authentication, this would not change the fact that *Auto Acceptance has admitted Muller sent text messages to Plaintiff with the same basic wording as the texts she has introduced as evidence*. <u>Compare</u> Doc. #159-1, at 1 ("stickandmove10: Are you aware that [Auto Acceptance] filed a warrant for your arrest for concealment of a motor vehicle, under statute 16-9-51 of the GA General Assembly?"), <u>and</u> <u>id.</u> at 3 ("stickandmove10: You're making some pretty bad choices. Hope you enjoy jail."), <u>with</u> Doc. #177-3, at 4 (Balk: "I said [to Muller], did you really say what is being alleged, something along the lines of I hope you enjoy jail? And he said, I can't speak to the exact words, but it may have been close to that. . . . [Attorney:] And did [Muller] remember telling Ms. Duke, in the text message, that a warrant had been filed for her arrest? [Balk]: Based on my memory and the document in front of me, yes."). In the end, this admission renders discussion of authenticity irrelevant, as Plaintiff's claim would survive—and succeed—based on the admission alone.

Auto Acceptance next argues Plaintiff's text messages are inadmissible because they are hearsay. As Fed. R. Evid. 801(d)(2)(D) makes clear, however, a

statement offered against an opposing party is *not* hearsay if the statement was made by the party's "employee on a matter within the scope of that relationship while it existed." Here, the text messages are not hearsay because they were written by Muller, who was an Auto Acceptance employee acting within the scope of his employment in attempting to locate Plaintiff's vehicle. And again, even if the "stickandmove10" text messages were deemed inadmissible hearsay, Auto Acceptance has still admitted to sending text messages with the same wording.

Auto Acceptance also argues the text messages are inadmissible under Fed. R. Evid. 403, which allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Auto Acceptance's entire Rule 403 argument, however—on both probative value and unfair prejudice—is merely a rehash of its Rule 901 authentication argument. That is, it argues the texts have no probative value and are extremely prejudicial because they have not been authenticated. As the Court has already determined, Plaintiff *has* authenticated the texts, so they will not be excluded under Rule 403.

Auto Acceptance's last evidentiary argument involves Fed. R. Evid. 407. Under Rule 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct." Based on this, Auto Acceptance argues Muller's admission and subsequent punishment at the hands of Auto Acceptance are inadmissible because they were part of its remedial efforts to make the harm less

likely to occur.  This is only partially correct.  Auto Acceptance's *discipline* of Muller for sending the texts does appear to be a qualifying remedial measure under Rule 407.  See Specht v. Jensen, 863 F.2d 700, 701-02 (10th Cir. 1988) (disciplinary actions are remedial).  That being said, Specht—the only Tenth Circuit case Auto Acceptance cites—notes that *investigative findings* are not remedial measures and therefore do not fall within Rule 407's ambit.  See id. at 702; Rocky Mountain Helicopters, Inc. v. Bell Helicopters, Inc., 805 F.2d 907, 918–19 (10th Cir. 1986) (investigative materials are not covered by Rule 407 in part because of the "danger of depriving 'injured claimants of one of the best and most accurate sources of evidence and information.'" (citation omitted)).  Here, Muller's admission came during Balk's initial investigation of the incident.  Thus, it is admissible.[4]

Auto Acceptance put forth the above arguments in reference to the initial UPA requirement that a statement or representation have been made.  For the reasons detailed, Plaintiff has proved this requirement.  Auto Acceptance next contends the text messages were not sent in connection with the collection of a debt because

---

[4] Notably, Auto Acceptance's subsequent discipline of Muller is inadmissible only in regard to Plaintiff's efforts to prove *culpability* under the UPA.  The discipline probably could be introduced to demonstrate the *authenticity* of the text messages or to *impeach* witnesses who deny this authenticity.  See Fed. R. Evid. 407 ("[T]he court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership [or] control . . . .").  Here, however, evidence of the discipline is not necessary for authentication given Muller's admission.  Thus, the Court has omitted any discussion of his subsequent discipline from this opinion, with the exception of this footnote and accompanying paragraph.

repossession does not qualify as debt collection. For support, Auto Acceptance points out the Sixth Circuit held that "an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the [Fair Debt Collection Practices Act]." Montgomery v. Huntington Bank, 346 F.3d 693, 701 (6th Cir. 2003) (citing 15 U.S.C. § 1692 et seq.).

In response, Plaintiff contends the UPA is broader than the FDCPA, a possibility which the FDCPA specifically anticipates. See 15 U.S.C. § 1692n ("[A] State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter."). Plaintiff argues based on New Mexico administrative law that the UPA applies to creditors and all types of debts, whereas the FDCPA only applies to consumer debts and does not cover the misconduct of creditors. See N.M. Admin. Code § 12.2.12.7. Plaintiff also cites In re Daniel, where the District of South Carolina held debt collection activities were indeed covered by the South Carolina Unfair Trade Practices Act. 137 B.R. 884, 886–87 (D.S.C. 1992).

The Court need not resolve this dispute. This is because Auto Acceptance ignores Plaintiff's ability, under this element of the UPA, to make out a claim even if the collection of debts is not at issue so long as the statement in question was "made in connection with the sale, lease, rental, or loan of goods or services." N.M. Stat. Ann. § 57-12-2(D). Given that UPA provisions are to be interpreted liberally, Quynh Truong, 227 P.3d at 81, the repossession of Plaintiff's Dodge Charger was

11

undeniably "in connection with [its] sale, lease, rental, or loan." Auto Acceptance has provided no law that would indicate otherwise. Thus, assuming without deciding that the repossession did not qualify as debt collection under the UPA, it still meets this element of a UPA cause of action.

Finally, Auto Acceptance contends the texts were immaterial because Plaintiff did not discuss them with anyone else, complain about them to Auto Acceptance, or view them as something to be concerned about. See Doc. #172-5; Salmeron v. Highlands Ford Sales, Inc., 271 F. Supp. 2d 1314, 1318 (D.N.M. 2003) ("A misrepresentation or omission is material if the plaintiff would have acted differently had he or she been aware of it, or if it concerned the type of information upon which he or she would be expected to rely when making his or her decision to act." (internal marks omitted)). This contention is factually questionable, at best. While Plaintiff did testify the texts were "not something that keeps me awake at night," she also testified she sent a text back to "stickandmove10" stating, "Stop texting me these *threats*." Doc. #172-5, at 3 (emphasis added). Regardless, much like Access Auto in the Court's companion opinion, see Doc. #215, at 17–18, Auto Acceptance misunderstands the standard at play. Salmeron notwithstanding, "[t]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.'" Smoot v. Physicians Life Ins. Co., 87 P.3d 545, 550 (N.M. App. 2003). Thus, even assuming Plaintiff was not actually deceived, Auto Acceptance has declined to argue its representation would not tend

12

to deceive or mislead a reasonable person, much less any person.  Nor would such an argument hold water, as the texts in question here plainly fall within the UPA's range of material or deceptive trade practices.  <u>See</u> N.M. Stat. Ann. § 57-12-2(d)(15) (deceptive trade practice includes "stating that a transaction involves rights, remedies or obligations that it does not involve"); <u>cf.</u> 15 U.S.C. § 1692e(4) (including, in a list of actionable false, deceptive, or misleading representations, "implication that nonpayment of any debt will result in the arrest or imprisonment of any person").

In summary, Plaintiff has conclusively demonstrated Auto Acceptance (*qua* Muller) knowingly made false or misleading statements (texts) tending to deceive or mislead in the connection with the sale of goods (a Dodge Charger) and in the regular course of its trade or commerce (automotive financing).  No genuine dispute exists, so the Court grants summary judgment to Plaintiff and denies it to Auto Acceptance.  Moreover, based on the evidence presently before it, the Court denies Auto Acceptance's motion in limine to exclude the texts from "stickandmove10."

## B. Surplus payment

Plaintiff next alleges Auto Acceptance violated the UPA by failing to pay her the surplus amount resulting from the repossession of her car.  In response, Auto Acceptance contends it paid the surplus right after Plaintiff's lawsuit was filed, mooting the issue.  Auto Acceptance is incorrect.  Under the UPA, the issue is not the actual payment, but whether a false or misleading representation was knowingly made.  That is to say, payment in the face of a lawsuit does not make a prior false

13

or misleading representation magically disappear. Here, Plaintiff asserts Auto Acceptance knowingly made two different false and misleading representations in conjunction with the surplus payment.

First, Plaintiff asserts Auto Acceptance knowingly declined to notify her of the surplus for at least four months, which falsely represented to her that no such surplus existed. Auto Acceptance's primary argument against this claim is that it did not *fail* to notify Plaintiff so much as it *delayed* notification until it could confirm her address. Plaintiff, Auto Acceptance contends, not only failed to provide an update when she moved from Georgia to New Mexico in violation of her contract, but she also falsely confirmed her address was still in Georgia when she was actually living in New Mexico. Because of this confusion, Auto Acceptance argues, it could not send the surplus check until it determined where Plaintiff was actually living. In reply, Plaintiff contends Auto Acceptance admittedly made *zero* attempts to contact her to confirm her address or notify her of the surplus; this despite the fact it had made numerous efforts to contact her before repossession, some of which were successful. And regardless, Plaintiff asserts, thanks to its successful repossession efforts Auto Acceptance undeniably knew her phone number and where she lived.

No oral statement, written statement, or visual description was made during the time period in question. Indeed, Plaintiff's claim relies on the lack of any such statement or description. Thus, the first thing the Court must determine is whether Auto Acceptance's nearly half-year silence regarding the surplus can qualify as a

"representation of any kind." In a companion opinion, the Court set out the law in this area. See Doc. #215, at 14–16. In short, the term "representation" as used in the UPA has been interpreted liberally to cover both action and inaction. See, e.g., Jaramillo v. Gonzales, 50 P.3d 554, 562 (N.M. App. 2002); Richardson Ford Sales, Inc. v. Johnson, 676 P.2d 1344, 1347–48 (N.M. App. 1984). Thus, although Auto Acceptance is correct that no case exists directly on point, the above case law tends to indicate a lengthy failure to perform a required action *could* represent that such action is not actually required.

Unlike in the companion piece, however, the Court is not convinced here that the evidence conclusively demonstrates Auto Acceptance made a representation that no surplus existed by delaying payment for a number of months. Rather, a genuine fact issue appears to exist. On one hand, Longino testified that Auto Acceptance's letter and the surplus check, which were prepared almost immediately after the repossession sale, were not sent out only because of concerns about the correct address. See Doc. #172-2, at 2–3 (Longino affidavit), Doc. #177-8, at 2 (Longino deposition); see also N.M. Stat. Ann. §55-9-628(b) ("A secured party is not liable . . . to a person that is a debtor or obligor, unless the secured party knows . . . how to communicate with the person."). The evidence of Plaintiff's dodgy pre-repossession behavior supports this. See, e.g., Doc. #172-2. at 3–4 ("On March 29, 2011 Ms. Duke . . . confirmed that she was living in Evans, Georgia. However, during the repossession process, [Auto Acceptance] was notified no-one was actually living at

Ms. Duke's address in Evans, Georgia and the property was vacant."). So does the fact that Auto Acceptance immediately remitted the surplus upon Plaintiff's filing of a lawsuit. Moreover, Plaintiff has not presented any evidence indicating what the normal time period for disbursing surplus payments is; for all the Court knows, four to six months may be fairly normal.

On the other hand, severely undercutting Auto Acceptance's version of events is the fact that it never, in nearly half a year, made any kind of effort to contact Plaintiff, much less send her the surplus amount. Per this line of thinking, Auto Acceptance's numerous prior efforts to contact Plaintiff, along with its repossession of her car in Rio Rancho, should have given it a number of leads to follow in regard to contacting her, at minimum.[5] Given this context, Auto Acceptance's utter silence could be interpreted as a representation that no such surplus existed. Furthermore, while Auto Acceptance's eventual payment could be interpreted in its favor, it could also be interpreted in Plaintiff's favor; that is, a reasonable jury could take a negative view of the fact that Auto Acceptance only remitted Plaintiff's rightful surplus upon being sued over that very surplus. In the end, because significant evidence exists on both sides of this question, summary judgment cannot be granted.[6]

---

[5] Auto Acceptance asserts Plaintiff "could have simply called" if she was truly concerned about a surplus. Doc. #172, at 18. This cuts both ways, as Auto Acceptance also "could have simply called" Plaintiff to inform her of the surplus.

[6] Auto Acceptance's reliance on <u>Lohman</u>, 166 P.3d 1091, does not change this conclusion. In <u>Lohman</u>, the New Mexico Court of Appeals stated that under the UPA
(continued...)

For virtually the same reasons, a fact issue exists as to whether any representation, assuming one was made, was made knowingly.  In other words, the evidence is conflicted as to whether Auto Acceptance knowingly decided not to remit the surplus—representing through its utter inaction that no such surplus existed—or whether it merely was delaying until it could conclusively determine Plaintiff's address.  Similarly, a fact issue exists as to whether a four to six month delay "may, tends to, or does deceive or mislead" a person into thinking that no surplus existed at all.  Again, summary judgment will be denied on this claim to both sides.

Next, Plaintiff points out Longino admitted in deposition "that the surplus check that was paid to Ms. Duke was short about $58 or so, at least." Doc. #177-8, at 4–5.  In shortchanging her $58, Plaintiff asserts, Auto Acceptance violated the UPA by misstating to her the right she had under their agreement to receive more money.  Cf. N.M. Stat. Ann. § 57-12-2(d)(15) ("[S]tating that a transaction involves rights, remedies or obligations that it does not involve" is a deceptive trade practice.).  In response, Auto Acceptance only contests the "knowingly made"

---

[6](...continued)
"it appears that the duty to disclose only arises in relation to some *other* representation which would otherwise tend to mislead in the absence of the disclosure." Id. at 1099.  Even assuming this statement of law is applicable here in the way Auto Acceptance urges, another representation in the record "would otherwise tend to mislead in the absence of the disclosure."  As noted above, Auto Acceptance promised to Plaintiff she would "get the extra money" from a repossession sale.  See Doc. #159-5, at 2.  In the absence of a later disclosure that extra money was indeed obtained, this statement would clearly tend to mislead.

element. It contends the context of its admission clearly demonstrates this error was unknowing. See Doc. #177-8, at 5 (Longino: "I was not aware that there was a difference in the calculations between our system and what was actually refunded.").

Auto Acceptance is correct that no evidence in the record indicates it actually knew about the mistake. Actual knowledge is only half of the standard, however. The "knowingly made" requirement of a UPA claim can also be met if a party, "in the exercise of reasonable diligence *should have been aware* that the statement was false or misleading." Stevenson v. Louis Dreyfus Corp., 811 P.2d 1308, 1311–12 (N.M. 1991) (emphasis added). On this point, a genuine fact issue exists, a fact issue revolving almost entirely around Longino's deposition. In the deposition, Longino was asked multiple times, in several different ways, whether Auto Acceptance should have been aware of the mistake. Longino never directly answered these questions. Favoring Auto Acceptance, he testified several times that Plaintiff's surplus situation was "very unusual" because a refund check came back on the vehicle after Auto Acceptance had already calculated the surplus. See Doc. #177-8, at 5. Favoring Plaintiff, however, Longino testified that Auto Acceptance certainly "could have" gone back and double-checked the surplus calculation after the arrival of the refund check. See Doc. #177-8, at 5. Thus, whether Auto Acceptance *should* have gone back to check the surplus calculation is a question for the jury. As this is the only UPA element Auto Acceptance contests on this claim—aside from its general argument that vehicle repossession does not qualify as debt collection, which was

addressed above—the Court denies summary judgment to both sides.

## III. Uniform Commercial Code

Under the UCC, a secured party must apply the proceeds from the sale of a repossessed vehicle to, among other things, various reasonable expenses incurred and the underlying debt itself. <u>See</u> N.M. Stat. Ann. § 55-9-615(a) (copying UCC § 9-615(a)). After doing so, the "secured party shall account to and pay a debtor for any surplus." <u>Id.</u> § 55-9-615(d)(1). In paying a surplus, the secured party is required to send a written explanation to the debtor containing the following information in this order:

> (1) the aggregate amount of obligations secured by the security interest under which the disposition was made . . .
>
> (2) the amount of proceeds of the disposition;
>
> (3) the aggregate amount of the obligations after deducting the amount of proceeds;
>
> (4) the amount, in the aggregate or by type, and types of expenses . . . which are known to the secured party and relate to the current disposition;
>
> (5) the amount, in the aggregate or by type, and types of credits . . . to which the obligor is known to be entitled and which are not reflected in the amount in Paragraph (1) of this subsection; and
>
> (6) the amount of the surplus or deficiency.

<u>Id.</u> § 55-9-616(a), (c).

## A. Surplus payment

Plaintiff first argues Auto Acceptance violated the UCC by not paying her the

19

full surplus she was owed. By Plaintiff's accounting, she owed $5,415.45, and the net proceeds from the car were $8,390; therefore, her surplus payment should have been the difference between these two numbers—$2,974.55—instead of $1,954.50. In response, Auto Acceptance asserts the total amount owed by Plaintiff was actually $6,435.50, as stated in its explanation letter. Auto Acceptance contends the April 15 letter relied on by Plaintiff for the $5,415.45 figure only informed her what she had to pay in order to redeem the vehicle *prior* to the repossession sale.

A genuine fact issue exists regarding Plaintiff's surplus payment. This fact issue, however, does *not* involve determining whether Plaintiff received a smaller amount of surplus than she should have. In the Court's view, that question can easily be answered in the affirmative because Auto Acceptance itself has admitted "that the surplus check that was paid to Ms. Duke was short about $58 or so, at least." Doc. #177-8, at 4–5.[7] Auto Acceptance has presented no evidence that this deficiency has been rectified, nor that doing so would even affect a UCC analysis. Thus, summary judgment will be granted to Plaintiff on her claim that Auto Acceptance violated the UCC when it remitted a smaller surplus to her than she was owed.

What a jury will have to determine here is not the existence of a UCC violation, but rather the amount of money Plaintiff was shorted, as the evidence

---

[7] Neither Plaintiff nor Auto Acceptance bring up this admission directly in the context of Plaintiff's UCC claims. Regardless, the admission is referenced in the same briefs as the UCC claims, so the Court is not overstepping its bounds by relying on it here, especially when it so clearly applies.

conflicts as to whether Plaintiff was owed around $2,000 or $3,000. More precisely, Auto Acceptance's April 15 letter, its May 5 letter, and Longino's affidavit are in conflict with each other as to Plaintiff's monetary situation. To give one example, the April 15 letter stated the "*total* amount of [Plaintiff's] unpaid balance" was $5,415.45. Doc. #159-5, at 1 (emphasis added). Three weeks later, Auto Acceptance wrote in its explanation letter that the "Loan Payoff" amount was $6,435.50. Doc. #150-2, at 1. How, one might ask, did Plaintiff's loan payoff amount rise by over $1,000 in under three weeks? Neither letter gives any indication; indeed, both of them state or imply Plaintiff owed nothing for other charges and fees. Two years later, Longino attempted to explain this discrepancy in his affidavit, noting that the May 5 letter's "Loan Payoff" amount included, among other things, $47.40 for late fees for February, March, and April and $690 for non-sufficient funds fees. Doc. #172-2, at 3. But how could this be? If those were legitimate late fees, why did the May 5 letter list nothing next to "Fees & Charges"? Moreover, why weren't these fees included in the April 15 letter, since at least some of them clearly could have been, based on the apparent dates of accrual? In order to determine damages on this UCC violation, a jury will have to sort things out.

### B. Surplus explanation

Plaintiff next argues Auto Acceptance's written explanation of the surplus failed to comply with § 55-9-616. Auto Acceptance's response is twofold. First, it

contends its letter was "entirely proper" under § 55-9-616.[8]  Alternatively, Auto Acceptance contends any errors in its explanation do not warrant liability under § 55-9-616(d), which states that an "explanation complying substantially . . . is sufficient, even if it includes minor errors that are not seriously misleading."

Neither party provides much detail as to precisely how Auto Acceptance's explanation did or did not violate this section of the UCC.  Having said that, it is fairly obvious the explanation letter was not "entirely proper" under § 55-9-616(c), as Auto Acceptance asserts.  First, the statute requires the aggregate debt amount to be listed first, the proceeds second, the affect of the proceeds on the debt third, any additional expenses fourth, any additional credits fifth, and the final surplus amount last.  See id. ("[A] writing must provide the following information *in the following order . . . .*" (emphasis added)).  Here, Auto Acceptance's May 5 letter incorrectly listed the proceeds first, fees and charges second, and the debt amount third.  Second, Auto Acceptance appears to have lumped expenses in with the amount of debt, rather than creating a separate category as is required.   Third, Auto Acceptance inexplicably left the fees and charges line blank, choosing instead—if Longino's affidavit is to be believed—to lump fees and charges into the "Loan Payoff" section.

With obvious errors, substantial compliance is indeed what matters here.  And in the Court's view, the explanation letter did not substantially comply with § 55-9-

---

[8]  While Auto Acceptance cited "§ 55-9-615", it clearly meant § 55-9-616.

616(c).  In addition to the errors, this conclusion is informed by the Court's above

finding that Auto Acceptance did not remit to Plaintiff the total surplus she was

owed.  That is, Auto Acceptance's explanation was both procedurally deficient *and*

substantively misleading, and the procedural deficiencies have made it more difficult

for Plaintiff (and the Court) to determine the nature or extent of the substantive error.

In short, the Court cannot find that the errors are just "minor" and not "seriously

misleading."  Summary judgment is granted to Plaintiff on this issue.

## C. Non-delegable duty

Lastly, Plaintiff asks the Court to find repossession is a non-delegable duty

under the UCC and, as such, Auto Acceptance is liable for the misconduct of Access

Auto during the repossession of her vehicle.[9]  This appears to be a matter of first

impression for New Mexico state courts.  Plaintiff relies primarily on the official

UCC commentary:  "In considering whether a secured party has engaged in a breach

of the peace," the commentary states, "courts should hold the secured party

responsible for the actions of others taken on the secured party's behalf, including

independent contractors engaged by the secured party to take possession of

collateral."  § 55-9-609 cmt. 3.  Moreover, Plaintiff asserts, virtually every court to

have considered the issue recognizes this "fundamental principle."  See, e.g.,

---

[9]  In a companion opinion, the Court concludes Access Auto trespassed on
Plaintiff's land and violated the UCC when it repossessed Plaintiff's vehicle with
police assistance after a breach of the peace.  See Doc. #215, at 3–13.

*Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998) ("[I]n the repossession of secured collateral, the secured party has a nondelegable duty to repossess the secured collateral without breach of the peace."); *Clark v. Assocs. Commercial Corp.*, 870 F. Supp. 1011, 1016 (D. Kan. 1994) (similar); *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex. 1992) (similar).

In response, Auto Acceptance points out that, contrary to Plaintiff's assertion, several courts do not view vehicle repossession as a non-delegable duty. *See, e.g.,* *Bible v. First Nat. Bank of Rawlins*, 515 P.2d 351, 355 (Ariz. Ct. App. 1973) ("From the facts in this case there is simply no evidence that the act of repossessing an automobile involves a special danger to others so as to bring into play the exception to the non-liability rule of a principal for the acts of an independent contractor."); *Jiggetts v. Lancaster*, 531 S.E.2d 851, 853 (N.C. App. 2000) (similar). Auto Acceptance urges the Court to follow this reasoning. The Court declines to do so.

To begin with, the Court has already ruled on this issue in a previous order. *See* Doc. #83, at 6–7. There, the Court relied on Comment 3 of UCC § 55-9-609 to hold that "the New Mexico legislature specifically provided that secured parties are responsible for the actions of the independent contractors they hire." *Id.* at 7. Moreover, while Auto Acceptance here asks us to find repossession to be a delegable duty, elsewhere it admits the opposite. "In general, when a creditor hires an independent contractor to repossess the collateral," Auto Acceptance writes, "the creditor may be held liable for compensatory damages for the unlawful act of the

24

contractor." Doc. #148, at 9 (motion for summary judgment on punitive damages).

Finally, even disregarding the Court's prior order and Auto Acceptance's admission, "the trend clearly favors imposing liability on secured parties for acts of repossessors which constitute a breach of the peace at the time of repossession." Eugene J. Kelley, Jr., et al., Secured Party Liability for the Acts of Repossessors: Exposure, Protective Steps and Ethical Responsibilities, 55 Consumer Fin. L.Q. Rep. 158, 160 (2001). Indeed, while Plaintiff has numerous state supreme court cases for support, Auto Acceptance only cites cases from state appellate courts. Moreover, while New Mexico courts have not ruled directly on the issue, they *have* stated that "the Official Comments to the U.C.C. are persuasive . . . authority." First State Bank at Gallup v. Clark, 570 P.2d 1144, 1146 (N.M. 1977). Given all this, the Court still believes that as a matter of first impression the New Mexico Supreme Court would impose liability on Auto Acceptance for the acts of Access Auto during the repossession of Plaintiff's vehicle. Summary judgment will be granted to Plaintiff on this issue.

IV.

In summary, no genuine dispute of fact exists as to Plaintiff's claims that Auto Acceptance violated the UPA by sending her false text messages and violated the UCC by not sending her the full surplus amount and by failing to sufficiently explain the surplus remittance she did receive. Likewise, the Court finds as a matter of law that Auto Acceptance is liable for actions taken by Access Auto during the repossession of Plaintiff's car. Genuine issues of material fact exist, however, on

whether Auto Acceptance violated the UPA by waiting at least four months to pay Plaintiff the surplus and by failing to pay Plaintiff the complete amount owed.

Auto Acceptance's motion for summary judgment on Plaintiff's UPA claims, Doc. #150, and motion in limine to exclude text messages, Doc. #151, are DENIED. Plaintiff's motion for partial summary judgment against Auto Acceptance on her UCC and UPA claims, and on vicarious liability, Doc. #158, is GRANTED IN PART and DENIED IN PART.

Entered for the Court
this 28th day of February, 2014


Bobby R. Baldock
United States Circuit Judge
Sitting by Designation