**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| TIAR DUKE,<br><br>    Plaintiff,<br><br>v.<br><br>ADRIAN GARCIA, a Rio Rancho Police Officer, sued in his individual capacity; BENJAMIN SANCHEZ, a Rio Rancho Police Officer, sued in his individual capacity; AUTOMOBILE ACCEPTANCE CORPORATION; ACCESS AUTO RECOVERY, LLC; and GUSTAVO SOTO,<br><br>    Defendants. | No. 11-CV-784-BRB/RHS |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT REGARDING MEDICAL CAUSATION**

**BALDOCK**, Circuit Judge.*

    Plaintiff Tiar Duke sued various Defendants on a number of claims revolving around the April 2011 repossession of her car. This opinion deals primarily with Defendants' various motions for summary judgment on Plaintiff's allegation that Defendants caused her to injure her foot during the repossession. Defendants contend, in short, that Plaintiff cannot demonstrate causation in regard to the alleged

---

    * The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

injury because she has failed to designate an expert witness on the subject. The Court agrees and, for the following reasons, grants the motions.

I.

The undisputed, relevant facts are as follows. On April 15, 2011, employees of Defendant Access Auto Recovery, LLC, repossessed Plaintiff's car in Rio Rancho, New Mexico. (The details of this repossession are laid out more fully in several companion opinions. See Doc. ##215, 218.) Here, it suffices to say Plaintiff alleges Access Auto's employee caused her to break her foot when he pushed her during the repossession. Plaintiff alleges that this injury prevented her from actively serving in the military, and that she endured medical expenses, pain and suffering, and lost enjoyment of life, among other things. The scheduling order in this case required Plaintiff to disclose any expert witnesses by no later than April 17, 2013. See Doc. #89. Plaintiff has never disclosed any expert witnesses, nor has she produced any expert disclosures or reports. See Fed. R. Civ. P. 26(a)(2).

II. Medical Causation

The Court need not repeat basic summary judgment principles, as they can be found in a companion opinion. See Doc. #215, at 3. With these principles in mind, the Court turns to the issues presented here.

Again, Defendants argue Plaintiff cannot prove they caused her foot injury because she has never designated an expert witness, which is required to show causation of an injury. Plaintiff, in response, contends expert testimony is *not*

2

required here because her situation is one of "common knowledge" whereby a layperson could reasonably determine medical causation.

New Mexico case law, while not always clear in this area, appears to indicate the following. First, "in many cases expert testimony will be required to establish [medical] causation." Folz v. State, 797 P.2d 246, 260 (N.M. 1990); see also Buchanan v. Downing, 394 P.2d 269, 272 (N.M. 1964) ("[E]xpert testimony is generally required to establish causal connection." (citation omitted)); State v. Newman, 784 P.2d 1006, 1013 (N.M. App. 1985) (Hartz, J., specially concurring) ("[C]ourts ordinarily do not permit juries to draw a conclusion regarding . . . medical causation without expert testimony directly supporting the conclusion."); cf. N.M. Stat. Ann. § 52-1-28(B) ("In all cases where the employer . . . [denies] that an alleged disability is a natural and direct result of the accident, the worker must establish [for workers' compensation] that causal connection as a probability by expert testimony . . . ."). This general rule is in place because "the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion." Woods v. Brumlop, 377 P.2d 520, 523 (N.M. 1962).[1]

---

[1] New Mexico law controls here because New Mexico seems to require, as a general principle, expert testimony in regard to medical causation. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 750–52 (3d Cir. 1994) (Pennsylvania's rule requiring "experts to testify that defendant's actions caused plaintiff's illness with a reasonable degree of medical certainty . . . is a substantive one, not in conflict with Federal Rules of Evidence, and thus governs in federal court."); Burke v. Air Serv Int'l, Inc., 685 F.3d 1102, 1107–09 & n.8 (D.C. Cir. 2012) (collecting cases); 29

(continued...)

3

Having said that, "such [expert] testimony is not always necessary" to establish medical causation. Folz, 797 P.2d at 260. This is especially the case "where exceptional circumstances within common experience or knowledge of the layman are present." Cervantes v. Forbis, 389 P.2d 210, 213 (N.M. 1964); cf. Wallace v. McGlothan, 606 F.3d 410, 420 (7th Cir. 2010) ("[E]xpert testimony is not required when 'the issue of causation is within the understanding of a lay person.'") (analyzing Indiana law)). In determining whether an expert is required, or whether "exceptional circumstances" exist, New Mexico trial courts utilize a reasonableness standard; that is, a plaintiff is required to produce an expert "when the trial court reasonably decides that it is necessary to properly inform the jurors on the issues." Folz, 797 P.2d at 260 (citing Gerety v. Demers, 589 P.2d 180, 195 (N.M. 1978)).

Given all this, the Court must decide whether an expert medical witness is reasonably necessary for a jury to determine the cause of Plaintiff's alleged injury, or whether causation is straightforward and simple enough that a lay juror could reasonably figure out causation. Viewing the record in a light most favorable to Plaintiff, the Court concludes a medical expert is indeed required in this case.

---

[1](...continued)
Wright & Gold, Federal Practice & Procedure: Evidence § 6263, at 204 (1997) ("[S]tate law controls where it makes a precondition to recovery in a medical-malpractice action the proffer of expert testimony to prove an element of the substantive-law claim, such as . . . causation."). Moreover, Plaintiff never explicitly argues that federal law applies, and there is no indication the application of federal law would make a difference in this specific dispute.

On the surface, Plaintiff's argument seems commonsensical; that is, in a vacuum, it probably would not take a medical expert to determine whether one person shoving another led to a broken foot. To give the example Plaintiff relies on, it would be perfectly reasonable to permit a lay jury to conclude, sans expert testimony, that a broken nose was the result of a punch to the face. These types of injuries don't involve rocket science, after all. Here, however, the situation is not nearly that simple, for two key reasons Defendants point out.

First, the record reveals multiple possible causes for Plaintiff's alleged injury. "[W]hen there is no obvious origin to an injury and it has 'multiple potential etiologies [*i.e.* causes], expert testimony is necessary to establish causation." Myers v. Ill. Cent. R.R. Co., 629 F.3d 639, 643 (7th Cir. 2010) (analyzing federal law); see also Anderson v. Bristol, Inc., 936 F. Supp. 2d 1039, 1067 (S.D. Iowa 2013) (same under Iowa law); Yates-Williams v. El Nihum, No. H-09-2554, 2011 WL 1157378, at *7 (S.D. Tex. Mar. 24, 2011) (Texas law); Halcomb v. Woods, 610 F. Supp. 2d 77, 85 (D.D.C. 2009) (District of Columbia law); Sayer v. Williams, 962 P.2d 165, 168 (Wyo. 1998) (Wyoming law); cf. Buchanan, 394 P.2d at 271 ("[T]here was . . . a complete lack of any showing that such negligence was a proximate cause of the injury. Other than the plaintiff's bare allegation of negligence, the record is plain that the actual cause . . . could have been any one of a number of things.").

Here, Plaintiff alleges the push from an Access Auto employee "caused her to break her foot." Doc. #52, at 8. In deposition, however, a military sergeant testified

5

Plaintiff told her the foot was injured when Plaintiff fell down stairs. Doc. #149-5, at 2–3. And in response to Defendants' summary judgment motion, Plaintiff made no attempt to controvert the factual assertion that Plaintiff told *two* military sergeants "that she broke her foot when she fell down the stairs." Compare Doc. #149, at 3 (undisputed material fact No. 9), with Doc. #180, at 2–3 (disputing only Nos. 8, 11, and 12 from Doc. #149). As such, the Court deems undisputed Plaintiff's making this statement. See Local Rule 56.1(b) ("All material facts set forth in the [moving party's] Memorandum will be deemed undisputed unless specifically controverted.").[2] For similar reasons, there is no dispute that in 2009 Plaintiff was diagnosed with peripheral vascular disease after she reported four years' worth of pain and swelling in her lower legs and ankles.[3] Thus, at the time of the repossession, she had a pre-existing medical condition potentially causing pain and swelling near the area of the alleged injury. (Plaintiff makes no mention of this condition in her response.) That establishes three possible causes for the alleged injury—or at least for pain and suffering in the area of the injury—which means expert testimony is required to sort things out. From a reasonableness perspective,

---

[2] In her response to a different motion for summary judgment, Plaintiff tacitly admits she made such a statement and attempts to neutralize its effect by chalking it up to a reluctance to "share the details of the repossession with her colleagues." Doc. #175, at 3. That explanation is irrelevant at this point, however, as the only thing that matters is whether there are multiple *potential* causes for the injury.

[3] "Peripheral vascular disease, a condition often associated with diabetes, is the clotting or hardening of the arteries in a person's arms or legs." Davolt v. Exec. Comm. of O'Reilly Auto., 206 F.3d 806, 808 (8th Cir. 2000).

this makes sense, as a lay jury could not reasonably be expected to distinguish between different possible sources of pain and swelling in Plaintiff's foot.

Second, the record indicates Plaintiff may not have suffered a broken bone at all, despite what she alleges in her complaint. At minimum, the medical situation is complex, and "actions involving 'medically complicated' injuries require expert testimony on causation." Savage v. Pilot Travel Ctrs., L.L.C., 464 F. App'x 288, 290 (5th Cir. 2012) (unpublished) (analyzing Mississippi law); see also Doc. #180, at 5 (Plaintiff: "[C]omplex medical conditions and injuries . . . fall outside the common knowledge and experience of a lay person.").

Dr. Matthew Cobb, a podiatrist, examined Plaintiff on April 18 and June 30, 2011—three days and nearly three months after the repossession, respectively. In deposition, Dr. Cobb testified that on April 18 Plaintiff "did have some swelling." Doc. #180-1, at 6. Furthermore, an X-ray taken on April 18 revealed a possible "fleck avulsion" (a fracture of sorts) in her foot. Id. at 3. According to Dr. Cobb, however, an equally possible conclusion was that Plaintiff had an osteophyte ("a piece of bone that's been there since birth"). Id. The only way to confirm whether Plaintiff had a fleck avulsion or an osteophyte would have been with an MRI, Dr. Cobb testified, which Plaintiff did not undergo. On June 30, Dr. Cobb took another X-ray of Plaintiff, which revealed "[n]o obvious signs of fracture." Id. at 4. This, Dr. Cobb testified, would cause him to "assume it was an osteophyte at this stage." Id. Still, Dr. Cobb testified, it is "impossible to point to fleck avulsion or an

7

osteophyte as her primary culprit of pain. . . . So it's still impossible to know exactly what was causing her pain." Id. Although he could not be certain, as of June 30 Dr. Cobb did not think Plaintiff had fractured her foot. The Court need not credit or discredit Dr. Cobb so much as point out that his testimony further demonstrates the medical complexity of the causation question here. And medical complexity demands an expert, which Plaintiff has not provided.[4]

### III.

In conclusion, given the uncertainty and complexity surrounding Plaintiff's alleged injury, this is not an "exceptional circumstance" where medical causation is "within common experience or knowledge of the layman." Cervantes, 389 P.2d at 213. As Plaintiff has not designated an expert before the deadline, the Court must grant summary judgment to Defendants on the issue of medical causation. Cf. Lopez v. Reddy, 113 P.3d 377, 384 (N.M. App. 2005) (affirming grant of summary judgment on the medical standard of care because no qualified expert had been put forth); Patterson v. Van Wiel, 570 P.2d 931, 938 (N.M. App. 1977) (similar). Plaintiff will not be able to establish that Defendants caused injury to her foot, so she

---

[4] Notably, unless offered and qualified as an expert, a treating physician "may not provide testimony beyond the scope of her treatment of plaintiff and [the physician's] conclusions must fall within the province of a lay witness." Montoya v. Sheldon, 286 F.R.D. 602, 613 (D.N.M. 2012) (quoting Parker v. Cent. Kan. Med. Ctr., 57 F. App'x. 401, 404 (10th Cir. 2003) (unpublished)). That is to say, a non-expert "treating physician . . . cannot testify to any opinions regarding causation." Id. (citing James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1215 (10th Cir. 2011)). Thus Dr. Cobb's appearance here does not change the fact that Plaintiff has not put forth an expert witness.

8

will not be allowed to recover any damages relating to that injury.

Defendants' motions for summary judgment on medical causation are hereby GRANTED. See Doc. ## 149, 152, 161.[5]

> Entered for the Court
> this 28th day of February, 2014
>
>
> Bobby R. Baldock
> United States Circuit Judge
> Sitting by Designation

---

[5] Defendant Automobile Acceptance also moves to exclude Dr. Cobb's testimony completely. See Doc. #145. Plaintiff, however, has openly admitted Dr. Cobb is not being put forth as an expert. And it seems Dr. Cobb has nothing to which he could testify as a lay witness, given that Plaintiff will not be allowed to establish causation of her foot ailment and that Dr. Cobb's only role was as a treating physician for Plaintiff's foot. Thus, the Court denies the motion as moot. The Court also denies Auto Acceptance's original motion for summary judgment on medical causation, Doc. #143, as it was superseded by an amended motion. See Doc. #149.

9