# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

TIAR DUKE,

    Plaintiff,

v.

ADRIAN GARCIA, a Rio Rancho Police Officer, sued in his individual capacity; BENJAMIN SANCHEZ, a Rio Rancho Police Officer, sued in his individual capacity; AUTOMOBILE ACCEPTANCE CORPORATION; ACCESS AUTO RECOVERY, LLC; and GUSTAVO SOTO,

    Defendants.

No. 11-CV-784-BRB/RHS

**ORDER GRANTING ADRIAN GARCIA SUMMARY JUDGMENT ON PUNITIVE DAMAGES, AND DENYING SUMMARY JUDGMENT TO AUTOMOBILE ACCEPTANCE CORP., ACCESS AUTO RECOVERY, LLC, AND GUSTAVO SOTO ON PUNITIVE DAMAGES**

**BALDOCK**, Circuit Judge.*

    Plaintiff Tiar Duke sued Defendants on a number of claims revolving around the April 2011 repossession of her car. For several of those claims, Plaintiff asks for punitive damages. Defendants, with the exception of Officer Benjamin Sanchez, have now moved for summary judgment on these requests, arguing their conduct

---

    * The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

does not warrant punitive damages as a matter of law. The Court agrees in regard to Officer Adrian Garcia. For the following reasons, however, the Court declines to grant summary judgment on punitive damages to Defendants Automobile Acceptance Corp., Access Auto Recovery, LLC, and Gustavo Soto.

I.

As detailed in companion opinions, see Doc. ##215–217, Defendant Auto Acceptance is a Georgia-based corporation whose principal business is sub-prime automotive financing and personal loans; Defendant Soto owns and operates Defendant Access Auto, a New Mexico business specializing in the repossession of motor vehicles; and Defendant Garcia is a Rio Rancho police officer.

In September 2008, Plaintiff purchased a Dodge Charger from a dealership in Georgia. Eventually, the contract was assigned to Auto Acceptance. On April 15, 2011, on behalf of Auto Acceptance, Soto drove his Access Auto tow truck to Plaintiff's home in Rio Rancho, intending to repossess the vehicle due to Plaintiff's failure to make payments. With Soto was Jerome Baca, an Access Auto employee. At Plaintiff's home, the duo spotted the Charger, and Plaintiff spotted the duo. A confrontation ensued, the details of which are fiercely disputed. At some point, both Plaintiff and Soto called 9-1-1. While waiting for the police, Soto and Baca did not leave Plaintiff's property. When Officers Sanchez and Garcia arrived, they separated and interviewed the parties and coordinated repossession of the vehicle by Soto and Baca. Plaintiff then sued Defendants, alleging various violations of her rights.

2

II. Punitive Damages

The Court need not repeat basic summary judgment principles, as they can be found in a companion opinion. See Doc. #215, at 3. With these principles in mind, the Court turns to the issues presented here.

At present, Plaintiff requests punitive damages from: (1) all Defendants for their taking of her vehicle without due process in violation of federal law,[1] and (2) Defendants Auto Acceptance, Access Auto, and Soto for conversion, trespass to land, assault, and battery, all in violation of New Mexico law. All current Defendants—again, minus Sanchez—have moved for summary judgment on punitive damages. These Defendants, however, did not commit the same acts and are not governed by the same law. Thus, for punitive damages purposes, the Court will split Defendants into three groups and analyze accordingly.

A. Access Auto and Soto

Access Auto and Soto first argue New Mexico requires evil intent for punitive damages. They make no assertion, however, about what federal law requires for punitive damages under 42 U.S.C. § 1983, despite being named in Plaintiff's due process claim. And for good reason. For § 1983 claims, punitive damages do not

---

[1] Plaintiff can prevail against private defendants such as Auto Acceptance, Access Auto, and Soto under § 1983 if she shows they deprived her of due process "under color of state law." Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009); see also Doc. #23 (denying Access Auto and Soto's motion to dismiss Plaintiff's federal due process claim).

3

require intent; rather, they are available when a defendant's conduct "involves reckless or callous indifference to the federally protected rights of others." Hardeman v. City of Albuquerque, 377 F.3d 1106, 1120–21 (10th Cir. 2004) (citation omitted); Smith v. Wade, 461 U.S. 30, 56 (1983). That being said, whether New Mexico would require intent for punitive damages here is unclear. Compare Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1250–51 (10th Cir. 2000) (punitive damages in New Mexico require at least conscious, deliberate, or knowing disregard of potential harm; gross negligence only qualifies if it includes some element of conscious behavior (relying on Paiz v. State Farm Fire & Cas. Co., 880 P.2d 300, 308 (N.M. 1994))), with Sloan v. State Farm Mut. Auto. Ins. Co., 85 P.3d 230, 234-35 (N.M. 2004) (limiting Paiz to *breach of contract* context for punitive damages and declining to apply it to the *tort* of insurance bad faith). Regardless, despite Access Auto and Soto's protestations to the contrary, Plaintiff has provided evidence that Access Auto and Soto intentionally violated her rights, which is enough to avoid summary judgment on punitive damages under federal and New Mexico law.

In a companion opinion, see Doc. #215, at 3–13, the Court holds Access Auto and Soto are guilty of trespass to land as a matter of law because they *intentionally* remained on Plaintiff's land after their right to be there had been revoked. Furthermore, as to the other claims against Access Auto and Soto—assault, battery, conversion, and violation of due process—Plaintiff has provided enough evidence of intent to avoid summary judgment. Again, the parties vehemently dispute what

4

happened during the repossession. And in requesting summary judgment, Access Auto and Soto essentially want the Court to resolve this dispute in their favor. That is, they all but ask the Court to disregard Plaintiff's testimony and construe their testimony—as well as that of Sanchez and Garcia—favorably to them. While a jury could reasonably do so, the Court cannot. Indeed, at this juncture the Court must view the facts in the light most favorable to the *nonmoving* party—Plaintiff. See Scott v. Harris, 550 U.S. 372, 380 (2007). Thus, if anything, to determine whether to grant summary judgment on punitive damages, the Court must accept *Plaintiff*'s testimony as true so long as it is based on her personal knowledge. Cf. Gross v. Burggraf Const. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

Here, Plaintiff testified to a number of details within her personal knowledge indicating Access Auto and Soto intentionally broke the law. First, she testified Soto or Baca physically prevented her garage door from being closed electronically. Second, she testified Soto or Baca "shoved me real hard" when she tried to pull the garage door down manually, which caused her to fall.[2] Doc. #175-2, at 4. Third, she testified that, after she got up, Soto or Baca continued to push her every time she tried to close her garage door. Fourth, she testified she told Soto and Baca numerous times they needed to leave her property, and they refused to do so. Fifth, she

---

[2] For reasons detailed in a companion opinion, Plaintiff cannot demonstrate that this physical violence led to any injury. See Doc. #217. That does not preclude, however, Plaintiff from testifying that a push and fall did indeed occur.

5

testified that when she told Soto and Baca she was going to call the police, one of them responded, "Well, call the police because all they're gonna do is just help us get [the car]." Id. at 6. Sixth, she testified Soto or Baca backed their tow truck into her driveway even though she was standing the middle of it, causing her to believe he was trying to hit her. Finally, she testified Soto and Baca proceeded to repossess her car with the help of the police officers once they arrived.

"'Intent' may be proven via circumstantial evidence; in fact, it is rarely established by other means." U.S. v. Nguyen, 413 F.3d 1170, 1175 (10th Cir. 2005). Thus, Plaintiff's testimony alone precludes summary judgment on punitive damages against Access Auto and Soto, as it provides a bounty of circumstantial evidence that Soto and Baca intended to violate the law. Having said that, other evidence, including Defendants' own depositions, can be reasonably read to demonstrate intent and support Plaintiff's testimony. For example, plenty of evidence indicates Soto and Baca willfully refused to leave Plaintiff's property even after she demanded (multiple times) they do so. Indeed, Officer Sanchez testified when he arrived at the scene Plaintiff was "irate" and repeatedly screaming "I want them off my property!" Doc. #157-2, at 3. Furthermore, the transcript of Plaintiff's three 9-1-1 calls indicates Plaintiff directly told a man attempting to repossess her car *nine* times either to leave her property or get out of her garage. See Doc. #175-4. Defendants do not contest the authenticity of this transcript, nor do they testify or argue anywhere they actually left Plaintiff's property at any point before the repossession.

6

To give another, even more significant example, Soto's own testimony indicates he likely knew his and Baca's actions violated the law. Soto testified that (1) once someone had been pushed, a breach of the peace had taken place, (2) "a breach of the peace means the repossessor has to abandon the repossession," and (3) he and Baca repossessed Plaintiff's car after either Baca or Plaintiff had been pushed. Doc. #175-3, at 7–8. This provides a strong basis for punitive damages in regard to Plaintiff's conversion and due process claims. Moreover, it effectively distinguishes Waisner v. Jones, 755 P.2d 598 (N.M. 1988), which is the primary New Mexico case relied upon by Access and Auto and Soto.

In Waisner, Waisner's truck was repossessed by Jones at a military base. Per military policy, Jones performed the repossession accompanied by a "security police sergeant who was armed and in uniform." Id. at 600. Because Waisner "felt intimidated by the sergeant's presence," she voluntarily relinquished the vehicle. Id. Eventually, the New Mexico Supreme Court held the repossession was wrongful because of the sergeant's presence; the court deemed punitive damages inappropriate, however, because Jones "was not shown to have been aware that he chose the wrong method to repossess Waisner's pickup." Id. at 603. Here, in stark contrast, Soto's testimony indicates he and Baca *were* aware they were using an unlawful method to repossess the vehicle. At minimum, enough evidence appears in the record for a jury

7

to reasonably find as such. Thus, summary judgment is inappropriate, per Waisner.[3]

Access Auto and Soto next argue, citing Gonzales v. Sansoy, 703 P.2d 904 (N.M. App. 1984), that in New Mexico an underlying award of compensatory or actual damages must occur before punitive damages can be awarded. Plaintiff cannot recover punitive damages, they contend, because she cannot recover actual damages. Defendants are correct that Plaintiff cannot recover damages for her allegedly broken foot because she has failed to provide an expert witness. See Doc. #217. Under federal law, however, "[r]ecovery of punitive damages has been held to be permitted in actions under section 1983 even in the absence of actual loss." Silver v. Cormier, 529 F.2d 161, 163 (10th Cir. 1976). Thus, Plaintiff does not need to recover actual damages to get punitive damages on her due process claim. Moreover, Defendants misconstrue New Mexico law on this point.

In Sanchez v. Clayton, 877 P.2d 567 (N.M. 1994), the defendants cited Gonzales for this same proposition. Id. at 572. In response, the New Mexico

---

[3] Defendants cite various repossession cases from other jurisdictions to support their position. See, e.g., Fulton v. Anchor Sav. Bank, FSB, 452 S.E.2d 208 (Ga. App. 1994); Ivy v. Gen. Motors Acceptance Corp., 612 So.2d 1108 (Miss. 1992). Given that Waisner, a case from the New Mexico Supreme Court, points directly to the holding here, the Court declines to analyze these other cases in detail. Even if they disagree with Waisner, we are bound to follow New Mexico law on all but the due process claim, and, as noted above, that claim does not require intent. Moreover, generally speaking, case law appears to support the conclusion reached here. See Jonathan M. Purver, Punitive damages for wrongful seizure of chattel by one claiming security interest, 35 A.L.R.3d 1016 ("Where [a defendant] acted *in full knowledge* that he actually had no right to possession of the property, the courts have readily approved punitive awards . . . ." (emphasis added)).

8

Supreme Court noted this "supposed" requirement

> is really a defective formulation of an entirely different idea—that the plaintiff must establish a cause of action before punitive damages can be awarded. Once the facts accepted by the trier show a valid cause of action, however, *there seems no reason to deny punitive damages merely because the plaintiff's damages are not pecuniary, or because the jury awards nominal damages*, or because it lumps all damages under the punitive label. Indeed, if the defendant's conduct otherwise warrants punitive liability, the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages.

Id. at 572-73 (emphasis added) (citation and internal marks omitted). The court then reiterated that punitive damages could be allowed "even when supported only by an award of nominal damages." Id. (citations omitted). "The key to determining whether punitive damages may be awarded absent actual or compensatory damages," the court held, "is the nature of the case." Id.

> In actions based on negligence, neither nominal nor punitive damages may be awarded without proof of actual damages because liability does not attach to negligent acts that do not result in actual harm or damage. In suits based on intentional torts, however, no allegation of actual damages is necessary to establish a cause of action.

Id. (internal citations omitted).

Plaintiff requests punitive damages on four state-law claims against Access Auto and Soto—trespass to land, conversion, assault, and battery[4]—all of which are typically viewed as intentional torts. See Notwen Corp. v. Am. Econ. Ins. Co., 206

---

[4] While Plaintiff lumps assault and battery together as one claim in her complaint, they are separate torts with similar but separate elements. See State v. Nozie, 207 P.3d 1119, 1128-29 (N.M. 2009).

9

F. App'x 811, 813 (10th Cir. 2006) (unpublished) (listing conversion and trespass as intentional torts); Benavidez v. U.S., 177 F.3d 927, 931 (10th Cir. 1999) (assault and battery sound in intentional tort). Moreover, Plaintiff clearly alleges in her complaint that these acts were intentional, and she has provided evidence to support a finding of intent. Indeed, in regard to her trespass to land claim, she has provided enough uncontradicted evidence to warrant summary judgment in her favor. See Doc. #215, at 3–13. Thus, per Sanchez, no proof of actual damages is necessary to sustain a punitive damages request on Plaintiff's state-law claims.

In summary, Plaintiff's testimony, along with other record evidence, provides at least some indication that Soto and Access Auto intentionally converted her vehicle, collaborated with police to take the vehicle without due process of law, and assaulted and battered her. Moreover, the Court is already granting summary judgment against Access Auto and Soto for intentionally trespassing on Plaintiff's land. Thus, for our purposes here, the answer is clear: the Court will not grant summary judgment to Access Auto and Soto on punitive damages.

### B. Auto Acceptance

As noted in a previous opinion, see Doc. #83, at 6–7, and discussed in a companion opinion, Doc. #216, at 23–25, the New Mexico legislature specifically provided that secured parties are responsible for the actions of independent repossession contractors that they hire. See N.M. Stat. Ann. § 55-9-609 cmt. 3 ("In considering whether a secured party has engaged in a breach of the peace . . . courts

should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral."). Thus, while New Mexico courts have not directly ruled on the issue, this Court believes they would impose liability on Auto Acceptance, the secured creditor, for the acts of Access Auto and Soto, the independent contractors, during the repossession here.

Perhaps anticipating this, Auto Acceptance's first argument in favor of summary judgment on punitive damages is that Access Auto and Soto's conduct was not outrageous, egregious, or intentional enough to warrant punitive damages. For reasons discussed in the previous section, this argument lacks merit. In short, Plaintiff has put forth evidence indicating Access Auto and Soto intentionally violated several of Plaintiff's rights during the course of the repossession, which is enough to deny summary judgment on punitive damages at this point.

Auto Acceptance next argues that even if secured creditors are liable for *actual* damages caused by an independent contractor, they cannot be held liable for *punitive* damages unless evidence suggests they authorized or ratified the commission of any unlawful activities—*i.e.* they had intent of some kind. Here, Auto Acceptance contends, it was unaware of any of the details of the repossession beforehand. In response, Plaintiff does not argue that such evidence exists. Rather, she contends, much like compensatory damages, that neither authorization, nor ratification, nor intent are required for a secured creditor to be liable for punitive damages.

11

No New Mexico law appears to be directly on point here. Waisner is of little assistance, as the New Mexico Supreme Court there granted summary judgment on punitive damages to both the creditor *and* the repossessor because the repossessor "was not shown to have been aware that he chose the wrong method to repossess Waisner's pickup." Waisner, 755 P.2d at 603. The court gave no indication whether the creditor would have been liable for punitive damages had evidence shown the repossessor *was* aware that his acts were unlawful. As such, the Court must determine how New Mexico courts would likely resolve this issue.

Courts have split on whether secured creditors should be vulnerable to punitive damages in this context.[5] The Court is similarly torn on the subject. On the one hand, if repossession truly cannot be delegated, then holding the secured creditor liable for both actual and punitive damages makes sense. Drawing a line between the two would undercut the basic premise of non-delegation. On the other hand, the purpose of punitive damages is to punish and deter, which are ideas anchored in

---

[5] Compare Williamson v. Fowler Toyota, Inc., 956 P.2d 858, 863–64 (Okla. 1998) ("Fowler's duty not to breach the peace when repossessing vehicles is nondelegable, and so Fowler is vicariously liable even for punitive damages for McGregor's actions."), Clark v. Assocs. Commercial Corp., 149 F.R.D. 629, 637 (D. Kan. 1993) (similar under Tennessee law), and MBank El Paso, N.A. v. Sanchez, 836 S.W.2d 151, 155 (Tex. 1992) (Cook, J., dissenting) (critiquing majority as holding similarly under Texas law), with Gen. Fin. Corp. v. Smith, 505 So.2d 1045, 1049 (Ala. 1987) (Torbert, C.J., specially concurring) ("Without proof that a creditor knew that an independent contractor was going to breach the peace in repossessing the collateral or ratification of the independent contractor's conduct, punitive damages should not be recoverable."), and Henderson v. Sec. Nat'l Bank, 72 Cal.App.3d 764, 772 (1977) (similar under California law).

intentional or extremely reckless conduct. Where a creditor has no knowledge or approval of the conduct in question, permitting punitive damages seemingly punishes a blameless party that needs no deterrence.

In the end, the Court declines to grant summary judgment on punitive damages in regard to Auto Acceptance, for several reasons. First, while case law is split, it appears that the majority of courts have declined to distinguish between actual and punitive damages in this context. This includes the Texas Supreme Court and two courts within the Tenth Circuit—the Oklahoma Supreme Court and a fellow federal district court in Kansas. <u>See</u> <u>supra</u> note 5.

Second, the Court is more persuaded by the arguments for this position than by those in opposition. To begin with, the argument against allowing punitive damages probably proves too much. That is, if allowing punitive damages when a creditor has no knowledge of wrongful conduct is vulnerable to attack, allowing *actual* damages when a creditor has no knowledge of the conduct seems just as open to attack. Either way, a party is being forced to pay for harm it did not cause or even know about. Courts are in complete agreement, however, that actual damages *are* permissible against an ignorant creditor, so drawing a line between actual and punitive damages here would be somewhat arbitrary and irrational. Moreover, the Court is not convinced that punitive damages are unwarranted against secured creditors. Even if a creditor did not ratify egregious conduct, holding the creditor responsible for ensuring that the contractor it hires for repossession does not

13

intentionally, recklessly, or fraudulently violate the law seems proper. In other words, this holding encourages repossession oversight, whereas the opposite holding would seemingly encourage creditors to remain ignorant.

Third, while Plaintiff does not bring it up in this context, a small amount of record evidence indicates Auto Acceptance's repossession practices may be worthy of punishment. True, no evidence shows direct approval or knowledge of Access Auto's tactics. Auto Acceptance has admitted, however, that one of its employees threatened Plaintiff with jail for her failure to pay or turn over the vehicle. As the Court holds in a companion opinion, this violated New Mexico law. See Doc. #216, at 5–13. Thus, the record indicates that *in this very case* Auto Acceptance resorted to unlawful practices to execute repossession. Given this, the Court believes a reasonable jury could find Auto Acceptance did have some knowledge that its independent contractor in this case was behaving or likely to behave outside the law.

Finally, the Court emphasizes this holding does not mean punitive damages will be exacted from Auto Acceptance. To the contrary, at this point the Court's decision only means that the issue is not appropriate for summary judgment. Auto Acceptance will have plenty of opportunity, if this case goes to trial, to argue to the jury that it does not deserve any kind of punishment because it lacked knowledge.

C. Officer Garcia[6]

The only remaining claim against Officer Garcia is a federal due process claim brought pursuant to 42 U.S.C. § 1983.[7] In analyzing whether punitive damages could be awarded against Garcia, federal law controls. As noted above, punitive damages are allowable under § 1983 if Garcia's conduct "involve[d] reckless or callous indifference to the federally protected rights of [Plaintiff]." Hardeman, 377 F.3d at 1120–21; Smith, 461 U.S. at 56. This standard is subjective in that the evidence must show Garcia actually perceived a risk that his conduct would violate federal law and was callously or recklessly indifferently to that risk. See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999). Moreover, the Court must evaluate "the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent." Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989) (citation omitted). That is, the focus of the Court's inquiry here "must be on whether [Garcia's] actions call for deterrence and punishment over and above that provided by compensatory awards." Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1308–09 (10th Cir. 2003) (internal marks and citation omitted).

---

[6] The City of Rio Rancho originally joined Garcia in moving for summary judgment on punitive damages, but was subsequently dismissed from the action. See Doc #207, at 2. Defendant Sanchez did not join this motion, as noted above.

[7] Plaintiff did not name any Government Defendants in her assault and battery claims. See Doc. #52, at 15. While she brought conversion and trespass claims against Government Defendants, Id. at 13–14, the Court previously dismissed those claims, see Doc. #83, at 14–15 & n.4. This dismissal included Officer Garcia. Thus, the only present claim against Garcia is Plaintiff's federal law due process claim.

By all accounts, the evidence concerning Garcia is slim. Garcia was a trainee of Officer Sanchez. Sanchez, along with Garcia and one other officer, was called to the scene to investigate whether an assault had been committed.[8] When they arrived, Plaintiff was standing behind her vehicle, trying to prevent Soto and Baca from towing it away. The officers then separated the parties, and Sanchez sent Garcia to talk with Soto and Baca. Garcia never spoke with Plaintiff, although he did overhear her "in an escalated voice speaking to Mr. Sanchez that she wanted [Soto and Baca] off her property." Doc. #189-1, at 2. According to Plaintiff, "Garcia kind of just stood by off in the" driveway while Sanchez—who Plaintiff figured "was probably in charge"—told Plaintiff that "[w]e're going to stand by and make sure [the repossession] happens and nobody gets hurt." Doc. #155-1, at 10, 14. Garcia then "stood by and allowed it to happen," according to Plaintiff. Id. at 14.

The Court previously denied summary judgment to Officer Garcia on liability. Garcia had argued summary judgment was proper because he had no personal involvement in the alleged due process violation. The Court rejected this argument because, by his own admission, Garcia took part in the investigation by speaking

---

[8] Plaintiff asserts the officers should have been investigating whether Soto and Baca had criminally trespassed and breached the peace, since that is what she alleged in her 9-1-1 call. Garcia testified in deposition, however, he and Sanchez were investigating an assault call, not a repossession. This testimony is supported by a police report. See Doc. #155-2. As Plaintiff basically acknowledges, her dispute with what specific crime the officers were initially investigating lies with the dispatcher, *not* with Garcia and Sanchez. See Doc. #178, at 3 (Plaintiff: "Any change by the dispatcher disregarded completely Ms. Duke's allegations.").

16

with Soto and Baca, and he heard Plaintiff's demand that Soto and Baca leave and did not instruct them to do so; rather, he stood by and allowed them to repossess the car. Thus, the Court found, at minimum a fact issue existed as to whether Garcia was neutral in his efforts to keep the peace. See Marcus v. McCollum, 394 F.3d 813, 818 (10th Cir. 2004) ("[T]he overarching lesson of the case law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.").

While Garcia may be found liable, he cannot, as a matter of law, be exposed to punitive damages. No evidence indicates Garcia—a mere trainee—was callously or recklessly indifferent to the risk of violating Plaintiff's rights. In his deposition, Garcia testified that he believed the officers "were there for an assault call, not a repossession." Doc. #155-4, at 3. Implicit in this statement is his belief that they were not there to handle a trespass situation, either. Moreover, Garcia testified he did not order Soto and Baca to get off Plaintiff's property because "we were still gathering information as to what occurred. . . . [W]e don't move people and then try to find out what happened. We have all parties there at that point so we conduct our investigation right then and there." Doc. #178-3, at 3. Whether correct or not, this rationale is not reckless or callous in regard to Plaintiff's rights.

Furthermore, looking at the totality of the circumstances, punishing Garcia or attempting to deter him from future malfeasance would not be wise. This is primarily because the evidence indicates Garcia was not the officer spearheading the

17

police action here.  While he was certainly involved, his actions and testimony evince a lack of control and influence over the proceedings.  For example, Garcia testified that, although he was supposed to be running the investigation at this point of his training, Sanchez took charge of the situation immediately on arrival.  See Doc. #155-4, at 2 (Garcia: "Sanchez instructed me to go speak to the male individual who was near the truck in the driveway. . . . [S]ome officers have the habit of taking over.").  He also testified that he never talked with Sanchez about what he learned from Soto and Baca.  Rather, when he went to take Sanchez paperwork obtained from them, Sanchez told him he would look at it later.  "Next thing I know," Garcia testified, "Ms. Duke had turned over the vehicle to the repossessors."  Id. at 4.  Indeed, Garcia was unsure in his deposition if Sanchez ever even debriefed him on the situation afterward.  Thus, even viewing evidence in a light favorable to Plaintiff, punitive damages are not appropriate against Garcia.  Cf. Johansen v. City of Bartlesville, 862 F.2d 1423, 1427 (10th Cir. 1988) ("[B]are allegations of violations of due process and equal protection and infringement of a liberty interest are not sufficient to amount to conduct resulting from . . . 'reckless or callous indifference to the federally protected rights of others.'" (citation and emphasis omitted)).

### III.

In conclusion, Auto Acceptance, Access Auto, and Soto's motions for

summary judgment on punitive damages, Doc. ##148, 154, are DENIED.⁹  Garcia's motion for summary judgment on punitive damages, Doc. #155, is GRANTED.

                Entered for the Court
                this 28th day of February, 2014


                Bobby R. Baldock
                United States Circuit Judge
                Sitting by Designation

---

   ⁹ The Court also denies Auto Acceptance's original motion for summary judgment on punitive damages, Doc. #144, as it was superseded by an amended motion. See Doc. #148.